| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>GEORGE HINDSON, | ) <br> ) <br> ) |
| Petitioner, | ) <br> ) |
| v. | )    No. 02 C 3784 <br> ) |
| JONATHAN WALLS, | )    Judge Rebecca R. Pallmeyer <br> ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

On October 9, 1996, Petitioner George Hindson was convicted of ten counts of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse. The conviction was affirmed on appeal, except with respect to application of the Illinois truth-in-sentencing statute, 730 ILCS 5/3-6-3(a)(2), which the court found unconstitutional and ordered redacted from Petitioner's sentence. The Illinois Supreme Court subsequently denied Petitioner's petition for leave to appeal. While this direct appeal was pending, Petitioner filed a pro se motion for relief from judgment under 735 ILCS 5/2-1401. The trial court denied the motion, the Illinois Appellate Court affirmed, and the Illinois Supreme Court denied Petitioner's petition for leave to appeal.

Petitioner also filed a motion for post-conviction relief, which the trial court dismissed as frivolous and lacking in merit. The Illinois Appellate Court reversed Petitioner's conviction and vacated the sentence on one of the counts in the indictment relating to sexual penetration due to insufficient evidence, but otherwise affirmed the dismissal. The Illinois Supreme Court subsequently denied Petitioner's petition for leave to appeal.

Petitioner has now exhausted his claims in the Illinois state courts and has filed a petition for habeas corpus relief. For the reasons set forth below, the petition is denied.

## BACKGROUND[1]

On May 1, 1996, Petitioner and his wife Edna were charged with performing a variety of sex acts with two minors – Edna's ten-year-old daughter, "K.M.," and the couple's eight-year-old son, "R.C." *People v. Hindson*, 301 III. App. 3d 466, 469, 703 N.E.2d 956, 959 (2d Dist. 1998) (hereinafter, "*Hindson I*"). Specifically, Petitioner and Edna were indicted on 43 counts of predatory criminal sexual assault of a child, two counts of aggravated criminal sexual abuse, and one count of aggravated battery. *Id.* The charges against Petitioner related to predatory criminal sexual assault were amended at some point before trial to aggravated criminal sexual assault.[2] *Id.*

### A.    Pre-Trial Hearing

On July 12, 1996, before the trial began, the trial court held a hearing to determine the admissibility of certain hearsay statements made by K.M. and R.C. to Kathy Mountford, who became the children's foster parent as of September 11, 1995.[3] *Id.*, 703 N.E.2d at 960. During the hearing, Mountford testified that both K.M. and R.C. recounted to her numerous acts of sexual abuse inflicted upon them by Petitioner and Edna. *Id.* Mountford testified that she first learned of the abuse sometime in April 1996 when she referred to one of her other children as "my dear," and K.M. informed Mountford that she did not like that name because Petitioner called her that. *Id.*

---

[1]      A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981). A petitioner has the burden of establishing by convincing evidence that a state court's factual determinations are erroneous. *See U.S. ex rel. Green v. Greer*, 667 F.2d 585, 589 n.6 (7th Cir. 1981). Hindson does not challenge the Illinois Appellate Court's factual findings in his petition. The court therefore adopts the facts set forth in the Illinois Appellate Court's Orders of December 4, 1998, January 6, 2000, and March 2, 2001, attached to Respondent's Answer as Exhibits C, I, and O, respectively.

[2]      In addition, on August 21, 1996, Petitioner was charged with six more counts of aggravated criminal sexual assault against R.C. and K.M. *Id.*

[3]      This hearing was held pursuant to the Illinois Code of Criminal Procedure, 725 ILCS 5/115-10. *Hindson I*, 301 III. App. 3d at 469, 703 N.E.2d at 959.

2

During the same conversation, K.M. told Mountford that Petitioner also called her "little princess" and touched her when he was drunk. *Id.*

Mountford further testified that in the fall of 1995, K.M. told her that she was afraid of heavy-set bald men because Petitioner had those same characteristics. K.M. also told Mountford that Petitioner would "come in and do things and touch [her]."[4]   *Id.*   According to Mountford, K.M. informed her in January or February of 1996 that Edna and Petitioner had touched her and had asked K.M. to touch them "in their private areas." *Id.*  In addition, on June 3, 1996, K.M. told Mountford that Edna and Petitioner had told her that "if [they] kept doing this, [they] could get [K.M.] pregnant." *Id.*  Finally, on June 9, 1996, K.M. told Mountford about "other specific sexual acts" performed on her by Petitioner.[5]  *Id.*

Mountford also testified to similar statements of abuse from R.C.  On April 8, 1996, for example, R.C. informed Mountford that he and his sister were forced to watch pornographic films, after which Edna and Petitioner would perform the same acts portrayed in the movie on R.C. and K.M. *Id.*  In describing the movies to Mountford, R.C. stated that "the woman would put her mouth on the man's d*** and the man would put his d*** in the girl's private parts." *Id.* at 470, 703 N.E.2d at 960.

At the conclusion of the hearing, the trial court allowed the majority of these statements into evidence, but declined to admit K.M.'s June 1996 statements, which the court found too unreliable given that they were made far into the investigation of Petitioner.[6]  *Id.*

---

[4]      The court's opinion does not reconcile Mountford's testimony that she first learned of the sexual abuse in April 1996 but that she had a discussion on the topic with K.M. in the fall of 1995.

[5]      The appellate court opinion does not provide details regarding these "other specific sexual acts."

[6]      The record does not indicate when this investigation of Petitioner began.

3

**B.    Petitioner's Trial**

    **1.    The Testimony**

At Petitioner's trial, K.M. testified about the abuse inflicted upon her by Edna and Petitioner during the summer of 1995 when she and the family lived in Antioch, Illinois. *Id.* K.M. stated that during this period, Petitioner touched her in ways she did not want to be touched, including touching her breasts, vagina, and butt. *Id.* K.M. reported that Petitioner put his mouth on her vagina and at times inserted his penis, a dildo, a knife, or his fingers into her vagina. *Id.* She further testified that Petitioner placed his hands and mouth on her breast, inserted his fingers into her butt, required her to bite his chest and touch his penis with her hands, and placed his penis in her mouth. *Id.*

According to K.M., Petitioner also forced her to perform sexual acts with members of her family. For example, she was forced to touch her brother's penis with her mouth and hands, and R.C. was in turn forced to touch her breasts and vagina. *Id.* K.M. was also forced to touch her mother's vagina and breasts, and Edna would do the same to her. *Id.* K.M. stated that she performed these sexual acts because she feared Petitioner and he threatened that "something would happen to [her] mom or [her] brother" if she failed to do what Petitioner requested. *Id.*, 703 N.E.2d at 961.

R.C. provided additional details regarding the sexual abuse perpetrated by Petitioner during the summer of 1995, at which time he was eight years old. *Id.* at 471, 703 N.E.2d at 961. R.C. testified that during this period, Petitioner touched his penis with his hands and his butt, and made him touch Petitioner's penis with his mouth, hands, and butt. *Id.* Petitioner also inserted his penis up R.C.'s butt and required R.C. to do the same to him. *Id.* R.C. testified that Edna engaged in sexual acts with him by forcing him to touch her breasts, vagina, and butt; forcing him to place his mouth on her vagina and breasts; and forcing him to put his penis in her vagina and butt. *Id.* R.C.

4

also stated that Petitioner forced K.M. to touch R.C.'s penis with her hands, mouth and vagina. *Id.* R.C. explained that he complied with his parents' demands for sexual acts because they told him that if he refused, they would harm him or K.M. *Id.*

Edna Hindson also testified on behalf of the State, acknowledging that she had pleaded guilty to the charges against her and had agreed to testify truthfully in exchange for a prison sentence totaling between 6 and 30 years. *Id.* Edna testified that she, K.M., R.C., and Petitioner moved to Antioch in July 1995, and that it was around this time that Petitioner sexually abused the children. *Id.* Specifically, Edna stated that Petitioner touched K.M.'s breasts, placed his finger in her vagina, forced K.M. to put her mouth on his penis, made K.M. insert her finger in his anus and, on one occasion, put his penis in K.M.'s vagina. *Id.* Edna also testified that Petitioner would request that she perform sexual acts with the children. *Id.* For example, Petitioner told her to suck R.C.'s penis and to put her finger up his butt, and he told R.C. to pinch Edna's breasts, lick her vagina, and put his penis in her vagina. *Id.* Petitioner also directed K.M. to put her finger in Edna's vagina and anus, to lick her vagina, and to pinch her breasts. *Id.*

According to Edna, Petitioner's sexual abuse did not stop there. She testified that Petitioner instructed the children to perform sexual acts on one another, including: R.C. placing his mouth on K.M.'s vagina; R.C. inserting his penis in K.M.'s vagina; R.C. inserting his finger in K.M.'s anus; K.M. touching R.C.'s penis with her hand and mouth; and K.M. inserting her finger in R.C.'s anus. *Id.* Edna recounted that on one occasion, she urinated in Petitioner's mouth and then Petitioner ordered the children to do the same to each other, which they did. *Id.* Edna testified that she and the children performed these sexual acts out of fear of Petitioner. *Id.* She did not provide dates for these events but stated that some of the sexual abuse took place starting on the night of August 26, 1995 and continued through to the morning of August 27, 1995. *Id.*

On cross-examination, Edna admitted that on two occasions in late July or early August 1995, she had sex with the children when Petitioner was not present. *Id.* at 472, 703 N.E.2d at

5

961. She also testified that the acts of abuse perpetrated by her and Petitioner took place only over the course of one month, and that she failed to notify the police of the abuse until she was arrested in April 1996. Id.

When Mountford testified at the trial, she at times provided greater detail regarding certain conversations with R.C. and K.M. than she had related at the pre-trial hearing. Id. For example, she provided additional information regarding a September 1995 conversation with K.M., testifying for the first time that in that conversation, K.M. had informed her that Petitioner "would touch her all over in places where he shouldn't and made her feel uncomfortable." Id. Mountford also provided further details regarding a conversation she had with K.M. in January or February 1996. Id. Specifically, Mountford added at trial that K.M. had told her that Petitioner and Edna instructed both K.M. and R.C. to sleep in the same bed, to take baths together, and to touch each other, explaining that it was okay because "everybody touched everybody." Id.

Dr. Emalee Flaherty, a pediatrician, testified regarding her examination of K.M. and R.C., which took place on April 11, 1996. Id. She stated that she was unable to find indications of sexual abuse in the genital area of K.M., but that K.M.'s anus was dilated 15 millimeters, which Dr. Flaherty explained was a "significant" amount and a sign of sexual abuse. Id. Dr. Flaherty provided no opinion regarding the abuse to R.C., but testified that he had injuries that might be caused by sexual abuse. Id., 703 N.E.2d at 962.

The Illinois Appellate Court opinions omit any reference to the defense witnesses called at trial. For purposes of this opinion, the court therefore will refer to Petitioner's brief on direct appeal regarding the evidence he introduced in his defense. The first witness, Dr. Mark Penn, testified that he examined both K.M. and R.C. on September 3, 1995 at the request of a Department of Children and Family Services ("DCFS") employee who suspected abuse had taken place. Dr. Penn, however, failed to discover any signs of abuse. (Petitioner's Brief on Direct Appeal to the Illinois Appellate Court, Exhibit A to Respondent's Answer, at 18.)

6

Pamela Rollins, a DCFS investigator, testified that she separately interviewed both R.C. and K.M. on February 28, 1996. K.M. told Rollins that the last instance of sexual abuse took place in May when K.M. was nine and lived in Aurora, Illinois. (Id.) K.M. also told Rollins that Petitioner never tried to put his "private part" inside her. (Id. at 18-19.) Rollins testified that when she interviewed R.C., he stated that he never watched pornographic films and that his mother stopped sexually abusing him when he was in the second grade. (Id. at 19.)

Defense witness Detective Douglas Hess testified that he interviewed both victims; the date(s) of the interviews does not appear in Petitioner's brief or the record. Detective Hess testified that during his 90-minute interview with K.M., she initially told him that Petitioner never inserted anything in her butt.[7] Detective Hess acknowledged, however, that later in the interview K.M. retracted that statement, telling him that Petitioner did insert things in her butt. (Id.) Detective Hess further testified that R.C. informed him that Petitioner had movies with "men and women doing all kinds of gross stuff in it." (Id.)

Jeannie Garnes, Petitioner's sister, testified that R.C. and K.M. lived with her family from February to May 1995, and that during this time, K.M. accused Garnes's husband of "misappropriately" touching her while she sat on his lap. (Id.) Petitioner also noted testimony from Mountford that she took R.C. and K.M. to see Dr. Toussaint, a pediatrician, on September 25 or 26, and that the doctor found only one injury, which was a burn mark on K.M.'s arm.[8] (Id.)

The last witness for the defense, DCFS investigator Marianne Zimmer, testified that on September 3, 1995, she interviewed Edna Hindson and K.M. in their home in Antioch, Illinois. (Id. at 20.) During this interview, Zimmer asked why "the father reportedly could not be living within the

---

[7]    Neither Petitioner's brief nor the record reflects the police department that employed Detective Hess.

[8]    The record does not reflect Dr. Toussaint's first name, or the year his examination took place.

7

residence" and, according to Zimmer, Edna answered that "the last time this happened was Illinois, not sure if it [the sexual abuse] happened up here where we live now." (*Id.*) Zimmer said that she understood Edna's answer to be in reference to the family's home in Antioch.[9]  (*Id.*)

### 2.    The Verdict

On October 9, 1996, a jury convicted Petitioner of ten counts of aggravated criminal sexual assault and one count of aggravated criminal sexual abuse.[10]  *People v. Hindson*, 301 Ill. App. 3d 466, 703 N.E.2d 956 (2d Dist. 1998); (Petitioner's Petition for Leave to Appeal to the Illinois Supreme Court on Direct Appeal, Respondent's Exhibit D, at 2.)

### C.    Sentencing Hearing

Following the verdict and the denial of Petitioner's post-trial motion, the trial court held a sentencing hearing to determine Petitioner's sentence. *Hindson I*, 301 Ill. App. 3d at 472, 703 N.E.2d at 962. The presentence report, reviewed by the court for sentencing purposes, revealed that at the time of Petitioner's offenses, he was on probation for a 1995 conviction for criminal sexual abuse of his stepdaughter K.M. *Id.* The report also included an evaluation of Petitioner by

---

[9]     The record does not provide any further information regarding Zimmer's testimony, and it is not clear to the court how it supports Petitioner's innocence.

[10]     Petitioner was convicted on the following counts:

Count 3 – Placed his tongue in K.M.'s vagina.
Count 5 – Placed his penis in K.M.'s mouth.
Count 7 – Placed his penis in K.M.'s vagina.
Count 9 – Placed his finger in K.M.'s vagina.
Count 11 – Placed K.M.'s hand in his anus.
Count 19 – Placed his penis in R.C.'s mouth.
Count 21 – Placed his penis in R.C.'s anus.
Count 25 – Placed R.C.'s finger in his anus.
Count 27 – Placed R.C.'s penis in his anus.
Count 45 – Abuse, act unspecified.
Count 51 – Placed his penis in K.M.'s mouth on August 27, 1995.

(Petitioner's Brief on Direct Appeal to the Illinois Appellate Court, Exhibit A to Respondent's Answer, at 23.)

Gerald Blaine, associate director of the Community Youth Network, who stated that Petitioner "was in the highest risk category to engage in future sexually deviant behavior" and was, in Blaine's opinion, one of the ten most dangerous sexual offenders he had ever evaluated.[11] *Id.*

Before announcing Petitioner's sentence, the trial judge discussed the mitigating and aggravating factors related to Petitioner and his crime. *Id.* In the judge's view, the mitigating factors were that Petitioner had attained his GED, was employed, had some college education, and served in the military. *Id.* at 473, 703 N.E.2d at 962. The aggravating factors included that Petitioner was on probation at the time of his crime and that he held a position of trust over his victims. *Id.* In addition, the court determined that Petitioner had little potential for rehabilitation, as indicated in the presentence report, because of the severity and repetitiveness of his crimes. *Id.* The court found that consecutive sentences were appropriate and necessary to protect the public, and sentenced Petitioner to a term of 72 years imprisonment.[12] *Id.*

## D.    Direct Appeal

On March 20, 1998, Petitioner filed a direct appeal from his conviction for criminal sexual abuse with the Illinois Appellate Court, arguing that he was denied a fair trial because the trial court

---

[11]    Blaine testified that he had experience evaluating hundreds of sex offenders. *Id.*

[12]    Petitioner's sentence on each count was as follows:

Count 3 – 6 years, to be served consecutively.
Count 5 – 6 years, to be served consecutively.
Count 7 – 6 years, to be served consecutively.
Count 9 – 6 years, to be served consecutively.
Count 11 – 6 years, to be served consecutively.
Count 19 – 6 years, to be served consecutively.
Count 21 – 6 years, to be served consecutively.
Count 25 – 30 years, to be served concurrently.
Count 27 – 30 years, to be served concurrently.
Count 45 – 7 years, to be served concurrently.
Count 51 – 30 years.

(Petitioner's Brief on Direct Appeal to the Illinois Appellate Court, Exhibit A to Respondent's Answer, at 23.)

improperly allowed hearsay evidence – i.e., the statements made by the victims to Mountford – without the necessary safeguards of reliability. (Petitioner's Brief on Direct Appeal to the Illinois Appellate Court, Exhibit A to Respondent's Answer, at 24.) Petitioner also argued that his sentence was excessive for his crimes, constituted an abuse of the trial court's discretion, and violated Petitioner's rights under the Eighth Amendment. (*Id.* at 48, 54.) Finally, Petitioner argued that the trial court erred in applying the Illinois "truth-in-sentencing" statute to his sentence because the statute violated the Illinois Constitution.[13] (*Id.* at 61.)

The State opposed Petitioner's appeal[14] and on December 4, 1998, the Illinois Appellate Court denied the appeal with respect to all of Petitioner's claims except the one pertaining to the constitutionality of the "truth-in-sentencing" statute. *Hindson I,* 301 Ill. App. 3d at 473-81, 703 N.E.2d at 962-67; (State's Brief on Direct Appeal, Exhibit B to Respondent's Answer.) On that claim, the court found that the statute was unconstitutional and barred its application to Petitioner's sentence. *Id.* at 481, 703 N.E.2d at 968. The court ordered that the sentencing order "be redacted to delete the language that the defendant's sentence . . . is subject to the truth-in-sentencing provisions," explaining that Petitioner would then "receive whatever good conduct credit he would have been eligible to receive prior to the enactment of the truth-in-sentencing provisions." *Id.,* 703 N.E.2d at 967-68.

On January 5, 1999, Petitioner filed a petition for leave to appeal with the Illinois Supreme Court, arguing that the trial court had improperly admitted Mountford's hearsay testimony at the trial. (Petitioner's Petition for Leave to Appeal to the Illinois Supreme Court on Direct Appeal, Exhibit D to the Respondent's Answer, at 11.) On April 22, 1999, the Illinois Supreme Court denied

---

[13]    The Illinois "truth-in-sentencing" statute required Petitioner to serve 85 percent of his sentence before being released. *Id.* at 480 (citing 730 ILCS 5/3-6-3(a)(2)(i)).

[14]    The record does not reflect the date the State's appellate brief was filed.

Petitioner's petition for leave to appeal. (Order of the Illinois Supreme Court which Denied Leave to Appeal in Petitioner's Direct Appeal, Exhibit E to Respondent's Answer.)

## E.    Motion for Relief from Judgment

On July 24, 1997, while his direct appeal was still pending, Petitioner filed a pro se motion for relief from judgment, arguing that his wife Edna Hindson had perjured herself at his trial, and that he was thus convicted based on false evidence.[15] (*Pro-Se* Motion for Relief from Judgment, included as part of Exhibit F to Respondent's Answer.) Petitioner's counsel later amended the motion to add a claim that the state denied Petitioner a fair trial by failing to provide either him or the jury with the exact details of Edna's plea agreement. (Amended Petition for Relief from Judgment, included as part of Exhibit F to Respondent's Answer, 1-3.)

Both claims raised by Petitioner in this motion relate to the testimony of his wife Edna. (Petitioner's Brief in the Illinois Appellate Court on Appeal from the Denial of his State Motion for Relief from Judgment, included as part of Exhibit F to the Respondent's Answer, at 5.) The court held an evidentiary hearing on March 30, 1998, at which Edna testified that Petitioner did not sexually abuse R.C. and K.M. while the family lived in Antioch, Illinois. (*Id.* at 20-21; *People v. Hindson*, No. 2-98-0429, at 11, 16 (2d Dist. 2000) (hereinafter "*Hindson II*"), Exhibit I to Respondent's Answer, at 2.) Edna stated that because Petitioner had a prior conviction for the sexual abuse of K.M., she never left Petitioner alone with either of the children during that time. (*Id.* at 21; *Hindson II*, at 2.) Edna admitted that Petitioner abused her when he was drinking alcohol, but stated that Petitioner never drank alcohol while the family was living in Antioch. (*Id.*; *Hindson II*, at 2-3.) She further testified that detectives informed her of the children's statements before she gave her own statement to police, and that she based her statement on the children's

---

[15]    This motion was filed pursuant to 735 ILCS 5/2-1401. (Petitioner's Brief in the Illinois Appellate Court on Appeal from the Denial of his State Motion for Relief from Judgment, included as part of Exhibit F to Respondent's Answer, at 5.)

assertions and not the actual events. (*Id.*; *Hindson II*, at 3.) In Edna's view, the children fabricated their stories of abuse while they were in the custody of DCFS because they were concerned that Petitioner was abusing her. (*Id.*) She described her statements to police as "exaggerations," and claimed that when she later attempted to withdraw them, her appointed counsel told her that it was too late. (*Id.* at 21-22; *Hindson II*, at 3.)

In regards to her plea agreement, Edna testified that the prosecutor led her to believe that she would receive a relatively short term of imprisonment, stating: "I'm sure you will get more than three [years] . . . but I don't think you will get the maximum." (*Id.* at 22; *Hindson II*, at 3-4.) Edna stated that her attorney told her that the prosecution would recommend the minimum sentence of six years, and that it was her understanding that she would be sentenced to six years. (*Id.*) On cross-examination, however, she acknowledged that the prosecutor did not lie to her about the terms of the plea agreement.[16] (*Id.*; *Hindson II*, at 4.)

The court denied Petitioner's motion for relief from judgment on April 1, 1998, without explanation. (Court Order in *People v. Hindson*, No. 96 CF 953, Denying Petitioner's Motion for Relief from Judgment, included in Exhibit F to Respondent's Answer.) On January 20, 1999, Petitioner appealed that decision, arguing again that he was denied a fair trial because the state presented unreliable testimony and failed to fully disclose the details of Edna's plea agreement. (Brief on Appeal from Denial of Motion for Relief from Judgment, at 5.) The Illinois Appellate court denied the appeal on both claims on January 6, 2000. (*Hindson II*.) *See also People v. Hindson*, 308 Ill. App. 3d 1098, 764 N.E.2d 192 (Table) (2d Dist. 2000). The court disagreed that Edna's inconsistent accounts and recantation of her trial testimony demonstrated her unreliability as a witness. The court noted, for example, that police Detective Len Brezinski testified that Edna had received only general information about the children's allegations and that she herself provided the

---

[16]     Edna was later sentenced to 27 years in prison. (*Hindson II*, at 3.)

12

specific details contained in her statements to police. *Hindson II*, at 4, 8. With respect to Edna's sentence, her attorney Joy Palmer testified that the State never gave Edna any reason to think she would receive the minimum sentence but, instead, indicated that she would be sentenced at the high end of the sentencing range. *Id.* at 9.

The court was also not persuaded by Petitioner's submission in his motion for relief from judgment of letters Edna wrote to him after they were both sentenced and incarcerated stating that she had lied about the abuse. In the court's view, Petitioner did not "put forth any reasons why the substance of these letters would be any more believable to the trial court than [Edna's] testimony at the hearing." *Id.* at 10-11. The court also noted that Joy Palmer and Investigator Mark Pleasant both testified at the March 30, 1998 hearing that Edna told them she recanted her statements to police in a letter to her sister only out of fear of losing the sister's support.[17] *Id.* at 8. In the court's view, Edna's dissatisfaction with her sentence and equivocal testimony at the hearing supported the trial court's determination that Edna's recantation of her trial testimony was not credible. *Id.* at 11.

As for the terms of Edna's plea agreement, Petitioner argued that the jury never heard that Edna pleaded guilty to "two Class X offenses with a sentencing cap of 30 years, with no extended term or consecutive sentences or the possibility of the application of truth-in-sentencing provisions," despite originally being charged with a number of offenses which could have resulted in a sentence of 120 years. *Id.* at 12. He also objected that the jury never heard about Edna's agreement that the children did not have to testify at her sentencing hearing. *Id.* The court stated that it did not condone the State's failure to apprize Petitioner and the jury of all of the terms of Edna's plea agreement, but held that the jury had sufficient information regarding that agreement to make an informed decision regarding her credibility. *Id.* at 13, 16. The court noted that Edna admitted on

---

[17]     The letter to Edna's sister was introduced at Petitioner's trial. (State's Brief on Appeal from Denial of Motion for Relief from Judgment, Exhibit G to Respondent's Answer, at 12.)

13

cross-examination that she could receive between 6 and 30 years, which put the jury on notice that she may have a motivation to alter her testimony in order to receive a lighter sentence. *Id.* at 14. In the court's view, the State's withholding of information regarding Edna's plea agreement did not deprive Petitioner of a fair trial. *Id.* at 16.

On January 14, 2000, Petitioner filed a petition for leave to appeal with the Illinois Supreme Court, arguing that he was denied a fair trial when the State failed to disclose at trial all of the terms of Edna's plea agreement. (Petitioner's Petition for Leave to Appeal to the Illinois Supreme Court from the Denial of his State Motion for Relief from Judgment, Exhibit J to Respondent's Answer, at 11.) On April 5, 2000, the Illinois Supreme Court denied Petitioner's petition for leave to appeal. (Order of the Illinois Supreme Court Denying Petitioner's Petition for Leave to Appeal from the Denial of his State Motion for Relief from Judgment, Exhibit K to Respondent's Answer.) *See People v. Hindson*, 188 Ill. 2d 574, 729 N.E.2d 500 (Table) (2000).

## F. Petition for Post-Conviction Relief

On September 13, 1999, Petitioner filed a petition for post-conviction relief arguing that he was denied the effective assistance of counsel during his criminal trial; that he was denied the effective assistance of appellate counsel; and that he was denied due process because the assistant state's attorney put improper evidence before the grand jury and because the State improperly amended Petitioner's indictment by changing the counts for "predatory criminal sexual assault of a child" to ones for "aggravated criminal sexual assault." (Petitioner's Petition for Post Conviction Relief, included as part of Exhibit L to Respondent's Answer.) The circuit court dismissed Petitioner's petition for post-conviction relief in a November 10, 1999 order, finding that the petition was frivolous and without merit. (*People v. Hindson*, No. 96 CF 953, included as part of Exhibit L to the Respondent's Answer.)

14

On May 31, 2000, Petitioner appealed the dismissal of his petition seeking post-conviction relief, arguing that the trial court erred by allowing the State to amend Petitioner's indictment by changing the counts for "predatory criminal sexual assault of a child" to ones for "aggravated criminal sexual assault." (Petitioner's Brief on Appeal from the Dismissal of Petition for Post Conviction Relief, Exhibit L to Respondent's Answer at 6.) Petitioner also argued that he was denied due process when he was found guilty of the count in the indictment alleging that Petitioner caused R.C. to place his finger in Petitioner's anus, because there was no evidence admitted at trial showing that Petitioner performed such an act. (Id. at 10.) Petitioner acknowledged that this issue was not properly preserved for appeal, but claimed that waiver did not apply because he was denied the effective assistance of appellate counsel. (Id. at 11.) Finally, Petitioner argued in a supplemental brief that he was denied due process of law because the trial court's imposition of consecutive sentences was unconstitutional in light of the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 U.S. 466 (2000). *People v. Hindson*, 319 Ill. App. 3d 1, 8, 747 N.E.2d 908, 914 (2d Dist. 2001) (hereinafter, "*Hindson III*").[18] On March 2, 2001, the Illinois Appellate Court reversed Petitioner's conviction on the disputed sexual penetration count, finding that no supporting evidence had been introduced at trial. *Id.* The court reversed and vacated the 30-year sentence resulting from that count. *Id.* The court affirmed, however, the lower court's dismissal of the remaining claims raised by Petitioner. *Id.* at 7, 12, 747 N.E.2d at 913, 917.

On April 11, 2001, Petitioner filed a petition for leave to appeal with the Illinois Supreme Court, arguing again that under the Court's ruling in *Apprendi*, he was unconstitutionally sentenced to consecutive instead of concurrent terms of imprisonment. (Petitioner's Petition for Leave to Appeal to the Illinois Supreme Court from the Dismissal of his Petition for Post Conviction Relief, Exhibit Q to Respondent's Answer, at 2.) Petitioner also argued that the amendment to his

---

[18]     The Illinois Appellate Court discussed this issue in its opinion but the court is unable to locate this "supplemental brief" in the record.

indictment was improper and, thus, rendered the indictment void. (*Id.* at 3.) On June 29, 2001, the Illinois Supreme Court denied Petitioner's petition for leave to appeal. (Order of the Illinois Supreme Court Denying Leave to Appeal from the Dismissal of Petitioner's Petition for Post Conviction Relief, Exhibit R to Respondent's Answer.) *See People v. Hindson*, 195 Ill. 2d 587, 755 N.E.2d 480 (Table) (2001).

## G.    Petition for Habeas Corpus Relief

Petitioner has exhausted his claims in the Illinois courts and now seeks habeas relief from this court. There is no dispute that further review in the Illinois courts is not available at this time. Under Illinois law, no additional proceedings regarding post-conviction relief may be held more than six months after the denial for leave to appeal or three years from the date of conviction, whichever is sooner, and barring extraordinary circumstances. 725 ILCS 5/122-1(c). Petitioner filed his petition for habeas relief on June 4, 2002, after this time period expired, and thus, he may no longer raise any claims in state court.

Petitioner raises seven claims in his habeas petition: (1) the trial judge erred by improperly admitting Mountford's hearsay testimony, (2) the sentence imposed on Petitioner was excessive, (3) Petitioner was convicted through the use of perjured testimony, (4) the State failed to disclose all of the details related to Edna Hindson's plea agreement, (5) Petitioner was denied the effective assistance of counsel at trial, (6) the trial court improperly allowed the state to amend the indictment, and (7) Petitioner was sentenced to consecutive sentences rather than concurrent sentences without notice to the jury or proof beyond a reasonable doubt in violation of the Supreme Court's ruling in *Apprendi*. (Petitioner's Petition for Writ of Habeas Corpus (hereinafter "Habeas Petition"), at 5-6, 12-14.) The Respondent argues that Petitioner is not entitled to habeas relief because he has procedurally defaulted a number of his claims, and because he fails to meet the standard necessary for a grant of habeas relief on the remaining claims.

16

## DISCUSSION

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") entitles a prisoner to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254. For claims that were adjudicated on the merits by a state court, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1) & (2).

Before an individual may seek habeas relief in the federal courts, the petitioner is required to "(1) exhaust all remedies available in state courts . . . and (2) fairly present any federal claims in state court first, or risk procedural default." *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citations omitted). A petitioner for habeas relief must submit "both the operative facts and the controlling legal principles of a constitutional claim" before properly seeking habeas review in the federal courts. *Id.* at 469.

A petitioner's failure to make use of existing state procedures may serve as a bar to habeas relief if the petitioner forfeited the claim by violating a procedural rule of the state. *Boerckel v. O'Sullivan*, 135 F.3d 1194, 1197 (7th Cir. 1998) (reversed on other grounds). Procedural default occurs in the case of a petitioner who has waived an issue by failing to follow a state procedural rule. In *Coleman v. Thompson*, 501 U.S. 722 (1991), the Supreme Court stated that the "Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729. The rule set out by the Court in *Coleman* is applicable to both substantive and procedural state law grounds. *Id.* In the event that a state court "declines to review a

17

petitioner's claim because the petitioner has failed to satisfy a state procedural rule, that claim is procedurally defaulted and barred from federal habeas review." *Pisciotti v. Washington*, 143 F.3d 296, 300 (7th Cir. 1998). State courts, however, "need not fear reaching the merits of a federal claim in an *alternative* holding." *Harris v. Reed*, 489 U.S. 255, 265 n.10 (1989). As the *Harris* Court explained,

> By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.

*Id.* (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935)) (emphasis in original).

Notwithstanding the general rule that procedurally defaulted claims are barred from federal habeas review, there are certain circumstances under which federal courts may nonetheless review claims that were never presented to the state courts. "Federal courts may only review defaulted claims if the petitioner shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure." *Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir. 1999). In the absence of such a showing, "a defaulted claim is reviewable only if refusal to consider it would result in a 'fundamental miscarriage of justice,' that is, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citations omitted). In order for a court to find a "fundamental miscarriage of justice," the petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

As noted, Petitioner has raised seven claims in his habeas petition, which the Respondent argues are either procedurally defaulted or do not otherwise support habeas relief in this case. The court addresses each argument in turn.

18

## I.    Admission of Hearsay Testimony at Trial

Petitioner first argues that the trial court erred by allowing Kathy Mountford's hearsay testimony to be admitted at trial because the statements lacked sufficient safeguards of reliability. (Habeas Petition, at 13.)  Petitioner objects that the trial court allowed Mountford to provide testimony at his trial that was "radically different" from the statements she made at the pretrial hearing. (*Id.* at 13.) In addition, Petitioner claims that the victims' statements to Mountford resulted from frequent meetings with the State's attorneys and other agents of the state, and not from their own memories and experiences. (*Id.* at 5, 13.)

The Respondent argues that Petitioner has procedurally defaulted these claims by failing to raise them in his post-trial motion. Indeed, the Illinois Appellate Court concluded as much in *Hindson I*, explaining that to preserve an issue for appeal, "both an objection at trial and a written posttrial motion raising the issue are required." 301 Ill. App. 3d at 473, 703 N.E.2d at 962 (citing *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988)). The court recognized that Petitioner properly objected to this issue at his trial, but deemed the argument waived because he failed to include the issue in his post-trial motion. *Id.* The court went on to determine that the admission of Mountford's conversations with K.M. and R.C. was not so prejudicial that it amounted to plain error sufficient to allow appellate review. *Id.* ("When a defendant has not properly preserved his claim of error, appellate review is limited to the determination of whether the statement was so prejudicial as to amount to plain error under Illinois Supreme Court Rule 615(a).") This discussion, however, does not open Petitioner's otherwise defaulted claim to a consideration of the merits. *See Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996) ("Illinois like many states provides a safety valve for situations in which enforcing a procedural default would mask a plain error. . . . To decide whether an error is plain requires consideration of the merits – but only so far as may be required to determine that issue.")

Nor does this claim meet an exception to the procedural default doctrine. As stated previously, a court may review a defaulted claim if (1) a petitioner shows cause for failing to raise the claim at the appropriate time and actual prejudice resulting from that failure, or (2) refusal to consider the claim would result in a miscarriage of justice due to the conviction of someone who was probably innocent. *Rodriguez*, 193 F.3d at 917. The second exception "applies only in the 'extremely rare' and 'extraordinary case' where the petitioner is actually innocent of the crime for which he is imprisoned." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). Petitioner has not made such a showing in this case. *See Schlup*, 513 U.S. at 329 ("Fundamental miscarriage of justice" requires a showing that, absent the constitutional violation, "it is more likely than not that no reasonable juror would have convicted [the petitioner].")

As for the first exception, Petitioner has not alleged any specific "cause" for his failure to raise this claim properly in the state courts. Petitioner has asserted a claim regarding the ineffective assistance of counsel, which in certain circumstances may serve as sufficient cause for such a failure. In this case, however, the ineffective assistance of counsel claim has itself been procedurally defaulted. Though Petitioner raised the issue in his petition for post-conviction relief, he did not include it either in his appeal from the dismissal of that petition or in his petition for leave to appeal to the Illinois Supreme Court. Moreover, Petitioner said nothing about ineffective assistance of counsel with respect to Mountford's testimony. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted . . . .")

Even if Petitioner could establish cause for his failure to raise the hearsay argument in his post-trial motion, he cannot show actual prejudice resulting from that failure. As the Illinois Appellate Court noted, K.M. testified that Petitioner touched her breasts, vagina, and butt with his mouth, hands, and penis, and R.C. testified that Petitioner engaged in oral and anal intercourse with him. This testimony was corroborated by Dr. Flaherty's testimony that K.M. had suffered

injuries to her anus that were consistent with sexual abuse, and by Edna Hindson's testimony that she had both witnessed and participated in the abuse. *See Hindson I*, 301 Ill. App. 3d at 474, 703 N.E.2d at 963. In the court's view, even if the trial court had prohibited Mountford from testifying about her hearsay conversations with K.M. and R.C., a reasonable jury could have convicted Petitioner based on the remaining evidence. *Cf. Strickler v. Greene*, 527 U.S. 263, 290 (1999) ("[T]he question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.'")

Petitioner's claim regarding Mountford's hearsay statements is procedurally barred and no exception permits review by this court. To the extent Petitioner claims that the testimony of R.C. and K.M. was false and the result of government influence, that claim also is procedurally defaulted because Petitioner never presented it to the Illinois courts for review.[19]

## II.    Imposition of an Excessive Sentence

Petitioner next argues that the trial court imposed an excessive sentence without examining the seriousness of his offense.[20] (Habeas Petition, at 5.) He claims that the 72 year sentence is the equivalent of a life sentence and is excessive to the extent that a person committing a double murder would receive a comparable term. (*Id.*) The Respondent argues that this claim is also procedurally defaulted because Petitioner failed to raise it as part of his petition for leave to appeal to the Illinois Supreme Court. The court agrees.

---

[19]    Petitioner has cited *Napue v. People of State of Illinois*, 360 U.S. 264 (1959) in support of his position that K.M. and R.C. gave false testimony. The petitioner in *Napue* sought habeas relief because a witness for the state falsely testified at trial that he was not provided with any consideration for his testimony, and though the Assistant State's Attorney knew the testimony was false, he failed to correct it. 360 U.S. at 265. The Supreme Court reversed the petitioner's conviction, explaining that the false testimony "may have had an effect on the outcome of the trial." *Id.* at 272. Having determined that Petitioner has procedurally defaulted his false testimony claim with respect to K.M. and R.C., the court need not analyze *Napue* in relation to Petitioner's case.

[20]    Also as a part of this claim, Petitioner maintains that he is innocent and that K.M. and R.C. were never harmed. (Habeas Petition, at 5.)

As noted, to properly raise a claim in a habeas petition, a petitioner must first provide the Illinois courts with a full and fair opportunity to decide the issue. As part of this full and fair opportunity, a petitioner must present an issue to the Illinois Supreme Court, even if the Illinois Supreme Court ultimately declines to review it. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (state prisoners have "no right to review in the Illinois Supreme Court," but they do have "a 'right . . . to raise' [their] claims before that court.") (emphasis in original). Petitioner failed to include his excessive sentence claim in his petition for leave to appeal, and it has been procedurally defaulted. As explained in discussing the hearsay testimony claim, Petitioner does not meet any exception to the procedural default doctrine. The court notes in that regard that a trial court has great discretion in imposing a sentence, and that the Illinois Appellate Court expressly concluded that the trial court in this case considered all applicable mitigating and aggravating factors, including Petitioner's education, employment, military service, position of trust over the children, probation for a prior similar crime, and high risk to "reoffend." Id. at 473, 476, 703 N.E.2d at 962, 964. The court finds no prejudice to Petitioner from the failure to preserve his excessive sentence claim in the state courts and will not examine the merits of that claim here.

III.   **Conviction Based on Perjured Testimony**

Petitioner claims that the State obtained his conviction for criminal sexual assault based in large part upon the testimony of his wife, Edna Hindson, who now admits that her testimony was false. (Habeas Petition, at 6, 13.) Petitioner cites to statements Edna made in numerous letters, in a notarized statement, and at the March 1998 evidentiary hearing to the effect that she lied about Petitioner's abuse of the two children. (Id.) The Respondent argues that this claim is procedurally defaulted because Petitioner failed to present it to the Illinois Supreme Court in his petition for leave to appeal. Again, the court agrees.

22

Petitioner raised the issue of Edna's perjured testimony in his motion for relief from judgment and in his appeal from the court's denial of that motion. He later abandoned this claim, however, in his petition for leave to appeal to the Illinois Supreme Court. As a result, the claim is procedurally defaulted. For the reasons explained above, Petitioner cannot establish any recognized exception to the procedural default doctrine. Even without Edna's testimony, K.M. and R.C. both testified about the abuse they suffered at the hands of Petitioner, and Dr. Flaherty corroborated that abuse with respect to K.M. *See, e.g., Hindson I*, 301 Ill. App. 3d at 474, 703 N.E.2d at 963. The court therefore declines to review the merits of this claim.

## IV.    Brady Violation

In a related argument, Petitioner claims that he was denied a fair trial because the State failed to provide either him or the jury with all of the details of Edna's plea agreement. He also objects that the State failed to correct Edna when she testified falsely regarding the terms of that agreement. (Habeas Petition, at 6.) The Respondent contends that this claim fails because the Illinois Appellate Court considered and rejected it on the merits and the holding was not unreasonable.

Edna was charged with several offenses that could have resulted in a total prison term of 120 years. At Petitioner's trial, however, he and the jury heard only that she would receive a sentence of between 6 and 30 years. *Hindson II*, at 12. In addition, they were not advised that the sentence included "no extended term or consecutive sentences or the possibility of the application of truth-in-sentencing provisions," or that Edna's children would not be required to testify at her sentencing hearing. *Id.* The Illinois Appellate Court recognized that the State did not properly provide the details of the plea agreement to the defense or the jury, but held that the jury had sufficient information to make an informed decision regarding Edna's credibility. *Id.* at 13. Specifically, Edna's testimony that her sentencing hearing was continued until Petitioner's trial

23

concluded, and that she would be sentenced to between 6 and 30 years for her crimes, put the jury

on notice that she might have a motivation to perjure herself in an effort to receive a lighter

sentence.[21] *Id.* at 13-14. As a result, the court found no *Brady* violation. *Id.* at 14.

In reaching this conclusion, the Illinois Appellate Court first quoted its earlier decision in

*People v. Torres*, 305 Ill. App. 3d 679, 712 N.E.2d 835 (2d Dist. 1999) regarding the proper

standard of review:

> The State's knowing use of perjured testimony to obtain a criminal conviction
> constitutes a violation of due process of law. A prosecutor cannot knowingly use,
> or allow to go uncorrected, perjured testimony that goes to the substance of a
> witness's testimony or to facts that bear on the witness's credibility. This includes
> both exculpatory evidence and impeachment evidence. Evidence of any
> understanding or agreement between a witness and the prosecution as to any
> future prosecution is relevant to the witness's credibility, and the jury is entitled to
> know about it. To establish a due process violation, the trial prosecution need not
> have known that the testimony was false; it is enough that there was knowledge by
> representatives or agents of the prosecution.

*Id.* (quoting *Torres*, 305 Ill. App. 3d at 685, 712 N.E.2d at 839). Without citing any additional case

law, the court then distinguished Petitioner's cited case, *People v. McKinney*, 31 Ill. 2d 246, 201

N.E.2d 431 (1964), in which the Illinois Supreme Court reversed a denial of a post-conviction

petition because the co-defendant falsely testified on cross-examination that he expected no

leniency from the state in exchange for his testimony against the petitioner. *Id.* at 248, 201 N.E.2d

at 432. The co-defendant was actually offered a reduction in his sentence in exchange for his

testimony, which was not disclosed by the prosecution at trial. *Id.* In granting the petitioner relief,

the court stated that "any fair appraisal of the record shows that [the co-defendant's] denials were

couched in terms that he had never been approached by the State's Attorney's staff and that he

had never been offered leniency, and that the jury, which should have been informed of all

---

[21]     The court notes that Edna could have been asked on cross-examination at trial
about other charges against her, whether any had been dismissed, and what sentences those
charges carried. Petitioner does not assert an ineffective assistance of counsel claim premised
on the failure to pursue such topics, nor is there any indication that Edna refused to answer any
such questions truthfully.

circumstances affecting the credibility of the witness, was left to believe that such was the case." *Id.* at 250, 201 N.E.2d at 433. The *Hindson II* court found Petitioner's case distinguishable from *McKinney* because Petitioner's jury was notified that Edna had entered into a deal with the prosecution, whereas the *McKinney* jury was wrongly told no agreement existed.[22]

Petitioner must meet a difficult burden to obtain habeas relief on this claim because the merits were addressed and rejected by the Illinois courts. Pursuant to AEDPA, this court will not grant relief unless the state court's decision was contrary to federal law, an unreasonable application of federal law, or unreasonable given the evidence admitted at trial. 28 U.S.C. § 2254(d)(1) & (2). The Illinois Appellate Court did not apply any federal law in concluding that Petitioner failed to establish a *Brady* violation regarding Edna's plea agreement. Thus, the court first considers whether the state court's decision is contrary to federal law.

The prosecution has a duty under the Constitution to disclose favorable evidence to the defense, including both exculpatory and impeachment evidence, if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). A prosecutor violates this *Brady* rule, which is a component of due process, only if the information suppressed denied the petitioner a fair trial. *United States v. Bagley*, 473 U.S. 667, 675 (1985) (citations omitted). Courts do not reflexively demand a new trial every time undisclosed evidence, favorable to the defense, is discovered after trial. *Giglio*, 405 U.S. at 154. Instead, a court must first determine that the undisclosed evidence was material. *Id.*

There are two separate tests for determining whether undisclosed information is material. First, evidence is material "if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceedings would have been different." *United States v. Bagley*,

---

[22] The court notes that *McKinney* is also distinguishable because the witness in that case affirmatively lied about his plea deal, whereas Edna told the truth but failed to disclose all of the terms of her agreement.

25

473 U.S. 667, 682 (1985). According to the Supreme Court, "[a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* The standard is different, however, if the prosecutor relied on testimony knowing that it was false. In such cases, the evidence is material "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

In *Braun v. Powell*, 227 F.3d 908 (7th Cir. 2000), an appeal from denial of habeas, the Seventh Circuit applied both standards of materiality and found that the petitioner was not denied a fair trial even though the state failed to disclose all of the details regarding a plea agreement. *Id.* at 920. The petitioner in *Braun* was on trial for the murder of William Weber. The prosecution's primary witness, Earl Jeffrey Seymour, was also arrested in connection with Weber's murder. *Id.* at 910. Before the petitioner's trial, the prosecution told Seymour, but not the defense, that after Seymour testified, the prosecution would reevaluate its sentencing recommendation for him. *Id.* at 920. The court found that the prosecution should have disclosed this information to the defense because it could have been used to impeach the witness. Nevertheless, the court did not believe the evidence was material, noting Seymour's own testimony that his sentencing recommendation was going to be determined at a later date, as well as his nearly week-long cross-examination. *Id.* at 921. In the court's view, the jury had sufficient evidence regarding Seymour's lack of credibility such that the prosecution's conduct did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Id.*

Like the plea agreement evidence in *Braun*, the plea agreement evidence withheld in this case should have been disclosed to the defense and to the jury, but it was not material in any event. It is not clear from the record whether the prosecution acted purposefully or inadvertently in this regard, but even under the lower standard of materiality applied to purposeful prosecutorial omissions, the additional plea agreement details are not material. Edna testified at trial that she had entered into a plea agreement with the State in exchange for her testimony, which put the jury

26

on notice that she was testifying to benefit herself and that she had a possible motive to lie. Though the additional details regarding the agreement were also relevant to Edna's credibility, Petitioner offers no basis for this court to conclude there is a reasonable likelihood that the verdict would have been different if the jury had known the information. Indeed, had the jury learned about the entire plea agreement and then fully discredited Edna's testimony as a result, the court is satisfied that the jury would still have convicted Petitioner based on the testimony of the victims. K.M. and R.C. both gave detailed testimony regarding the abuse they suffered at the hands of Petitioner, and Dr. Flaherty confirmed the abuse with respect to K.M. Based on that evidence, the court finds that the additional details of the plea agreement were not material and that Petitioner received a fair trial.

## V.    Ineffective Assistance of Counsel

Petitioner next argues that he was denied the effective assistance of counsel at trial because his trial counsel failed to subpoena witnesses beneficial to his defense or to properly cross-examine witnesses for the State. (Habeas Petition, at 13.) Specifically, Petitioner argues that his trial counsel failed to subpoena witnesses who would have testified that Petitioner was out of town on the days the abuse took place; who would have demonstrated that Edna's testimony was perjured; and who would have testified that the children were examined by another doctor looking for abuse and that this doctor was unable to find any signs of abuse. (*Id.*) Petitioner also maintains that if his trial attorney had properly cross-examined certain State witnesses, the jury would have concluded that the testimony was perjured or the result of improper suggestion. (*Id.*)

The Respondent argues that this claim is procedurally defaulted because Petitioner did not properly present it to the Illinois courts for review. The court agrees. As noted earlier, Petitioner included this claim in his petition for post-conviction relief filed with the trial court, but he did not include the claim in his appeal from the court's decision to dismiss the petition. Furthermore,

Petitioner did not raise the claim in his petition for leave to appeal to the Illinois Supreme Court. As discussed above, Petitioner does not meet any of the exceptions to the procedural default doctrine, and the court therefore declines to address the merits of this claim. The court again notes that in light of the detailed testimony of abuse from K.M. and R.C., as well as the statements from Dr. Flaherty, a reasonable jury could have convicted Petitioner even if he had called additional witnesses or conducted more thorough cross-examinations. *See Strickler*, 527 U.S. at 290 ("[T]he question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict.'")

## VI. Void Indictment

Petitioner contends that the trial court erred when it allowed the prosecution to alter the charges against him without requiring a new indictment. (Habeas Petition, at 13.) Prior to the start of Petitioner's trial, the State filed a motion with the court to amend the "predatory criminal assault"[23] charges to ones for "aggravated criminal sexual assault."[24] *See Hindson III*, 319 Ill. App. 3d at 3, 747 N.E.2d at 909. The State sought this change because Petitioner's criminal behavior took place prior to the enactment of the statute that included the offense of "predatory criminal sexual assault." (*Id.*)

The Illinois Appellate Court examined this claim on its merits and rejected it. *Hindson III*, Ill. App. 3d at 7, 747 N.E.2d at 913. In his appeal, Petitioner claimed that the amendment to his

---

[23]   The statute provides in pertinent part:

(a)   The accused commits predatory criminal sexual assault of a child if:

(1)   the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed[.]"

720 ILCS 5/12-14.1(a)(1).

[24]   The statute provides in pertinent part:

(c)   The accused commits aggravated criminal sexual abuse if:

(1)   the accused was 17 years of age or over and (i) commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed[.]"

720 ILCS 5/12-16(c)(1)(i).

indictment constituted a substantive change that voided the original indictment. *Id.* at 4, 747 N.E.2d at 911. The court noted that amendments to indictments are permitted when a defect is merely formal – i.e., it "does not alter the nature and elements of the charged offense." *Id.* at 5, 747 N.E.2d at 911 (citing *People v. Griggs*, 152 Ill. 2d 1, 32, 604 N.E.2d 257, 271 (1992); *People v. Patterson*, 267 Ill. App. 3d 933, 938, 642 N.E.2d 866, 869 (1st Dist. 1994)). Under such circumstances, the charging instrument is not void. *Id.* (citing *People v. Williams*, 161 Ill. App. 3d 613, 619, 515 N.E.2d 266, 270 (1987)).

The Appellate Court determined that 725 ILCS 5/111-5,[25] the Illinois statute addressing formal defects to an indictment, did not provide an exclusive list of such defects. *Id.* The court found that to the extent the elements of the original and amended charges in this case were identical, Petitioner received proper notice of the charges against him. *Id.* at 6, 747 N.E.2d at 912. In addition, the amended charge did not stray from what the grand jury intended to charge, which was the "sexual penetration by one 17 years of age or over with a victim under 13 years of age when the act was committed." *Id.* The court reviewed the elements of the original and amended charges and held that the amendment was merely formal in nature and, thus, permissible. *Id.*

In this court's view, the Illinois Appellate Court's decision is not contrary to federal law. As a general rule, a criminal indictment can only be materially amended by a grand jury, except that

---

[25]     The statute states in pertinent part:

An indictment, information or complaint which charges the commission of an offense . . . may be amended on motion by the State's Attorney or defendant at any time because of formal defects, including:

(a)     Any miswriting, misspelling or grammatical error;
(b)     Any misjoinder of the parties defendant;
(c)     Any misjoinder of the offense charged;
(d)     The presence of any unnecessary allegation;
(e)     The failure to negative any exception, any excuse or proviso contained in the statute defining the offense; or
(f)     The use of alternative or disjunctive allegations as to the acts, means, intents or results charged.

725 ILCS 5/111-5.

courts may amend an indictment with respect to matters of form. *United States v. Field,* 875 F.2d 130, 133 (7th Cir. 1989). "In general, amendments to an indictment will be allowed to stand if they do not 'change an essential or material element of the indictment so as to cause prejudice to the defendant.'" *Id.* (citations and internal quotations omitted). In Petitioner's case, the amendment did not alter an essential or material element; to the contrary, the amendment resulted in a new charge with identical elements. Thus, Petitioner did not suffer any prejudice as a result of the amendment and there has been no violation of his constitutional rights.

Even if the trial court erred in allowing the amendment, moreover, the error was harmless. In *Brecht v. Abrahamson,* 507 U.S. 619 (1993), the Court stated that an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 622 (citations omitted). In this case, the amended charge did not impact Petitioner's defense in any material manner because as noted, the relevant language of the two statutes is identical. Petitioner was not unfairly surprised by the new charge, nor was his defense impaired as a result. Thus, the court cannot say that the amended charge had a substantial or injurious effect or influence on the jury's verdict. Petitioner's petition for relief on this basis is denied.

## VII. *Apprendi* Violation

Petitioner's final claim is that the trial court improperly sentenced him to consecutive sentences. He specifically objects that the jury did not receive appropriate notice of the sentencing criteria, and that the court did not require proof beyond a reasonable doubt in accordance with the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000). In *Apprendi,* the Court struck down a New Jersey "hate crime" statute as unconstitutional where it allowed a trial judge to increase the range of imprisonment for possession of a firearm for an unlawful purpose if the judge found, by a preponderance of the evidence, that the offense was committed for the purpose of intimidating an individual or a group because of that individual's or group's race, color, gender,

30

handicap, religion, sexual orientation, or ethnicity. 530 U.S. at 490. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.*

At Petitioner's sentencing hearing, the trial court ordered him to serve consecutive sentences on eight of his aggravated criminal sexual abuse convictions in accordance with the Illinois consecutive sentencing statute, 730 ILCS 5/5-8-4(b).[26] *Hindson III*, 319 Ill. App. 3d at 10, 747 N.E.2d at 915. The appellate court reviewed the trial court's grounds for imposing consecutive sentences and determined that the primary reason was Petitioner's 1995 conviction for a similar offense. *Id.* at 11-12, 747 N.E.2d at 916. The court found that pursuant to *Apprendi*, the prior conviction was not only an appropriate fact for the court to consider in imposing a sentence above the maximum, but also sufficient in and of itself to merit consecutive sentences. *Id.* at 12, 747 N.E.2d at 916-17.

This court declines to address the merits of this claim because *Apprendi* "does not disturb sentences that became final before June 26, 2000, the date of its release." *Curtis v. United States*, 294 F.3d 841, 844 (7th Cir. 2002). *See also Dellinger v. Bowen*, 301 F.3d 758, 765 (7th Cir. 2002) (rejecting petition for habeas relief based on *Apprendi* where the petitioner's sentence became final prior to *Apprendi*'s effective date). Petitioner's sentence became final on April 22, 1999 when the Illinois Supreme Court denied his petition for leave to appeal. *See Teague v. Lane*, 489 U.S. 288, 295 (1989) (a conviction becomes final after the judgment has been rendered and the opportunities

---

[26]    The consecutive sentencing statute states in pertinent part:
Except in cases where consecutive sentences are mandated, the court shall impose concurrent sentences unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that consecutive sentences are required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record.
730 ILCS 5/5-8-4(b).

for appeal have been exhausted, including the period for filing a petition for certiorari with the United States Supreme Court). Thus, the June 26, 2000 *Apprendi* decision does not apply in assessing the validity of Petitioner's sentence. *See Lambert v. McBride*, 365 F.3d 557, 562 (7th Cir. 2004) (explaining that *Apprendi* is not applicable on collateral review).

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is denied.

ENTER:

Dated: May 31, 2005

REBECCA R. PALLMEYER
United States District Judge